IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

GALVESTER DANIELS,

Petitioner,

v. CASE NO. 1:07-cv-0100-MP -GRJ

SECRETARY,
DEPT. OF CORRECTIONS,

Respondent.
_____________________________/

**REPORT AND RECOMMENDATION**

This case is before the Court on Doc. 1, Petitioner's *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Petition stems from Petitioner's Alachua County jury-trial conviction for armed robbery for which he received a sentence of 10 years imprisonment. Petitioner contends that his trial counsel rendered constitutionally ineffective assistance by: (1) failing to move to suppress the victim's out-of-court identification of Petitioner and to object to the victim's trial testimony identifying Petitioner as one of the perpetrators; (2) failing to call an alibi witness; and (3) failing to object to the prosecutor's improper closing argument. Respondent has filed a response and appendix with relevant portions of the state-court record, and Petitioner has filed a reply. Docs. 13, 15. Upon due consideration of the Petition, the response, and the state-court record, the undersigned recommends that the Petition be denied.[1]

[1]Because the Court may resolve the Petition on the basis of the record, an evidentiary hearing is not warranted. *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

**State-Court Proceedings**

As set forth in the state-court record, the facts adduced at Petitioner's jury trial may be summarized as follows. *See* Respondent's Appendix ("App.") Exh. B (transcript of jury trial). The victim, Larry Monroe, was nineteen years old at the time of the offense. He testified that he was hanging out at a Chevron station in Archer, Florida, when two men whom he recognized "by face" drove up. Monroe asked the men for a ride to his home and got into the backseat. The driver did not drive toward Monroe's home, but instead turned in a different direction. Monroe protested, and the passenger pulled out a gun and told Monroe to "give him everything." Monroe gave the men his money and clothes, and the men pulled the car to the roadside and told Monroe to get out. As Monroe was exiting the car, the driver hit him. Shortly after exiting the car, he heard a gunshot.

Monroe walked to his brother's house, and told his brother and cousin about the robbery, describing the two men and the car. Based on this description, Monroe's cousin suggested that the robbers might be "Bobo and Sam." Monroe provided those names to the police the next day when he reported the robbery, and the police subsequently showed Monroe two photo lineups and asked if he could point out the robbers. Monroe identified Petitioner's co-defendant, Samuel Kaham, as the driver, and Petitioner as the passenger. Monroe also identified Petitioner and Kaham in open court.

Samuel Kaham's uncle, Andrew Brown, testified that he heard Petitioner say that he was going to "jack somebody," and that Brown then told Kaham not to ride with Petitioner. Brown testified that Petitioner bragged about getting cash and "dope" in the

robbery. Brown admitted on cross-examination that he could not recall when he heard the statements.

In addition to Andrew Brown and Monroe, the prosecution presented the following witnesses: Tim Rich, a bystander who observed Monroe on the night of the robbery getting into a car with two men whom he could not identify; Leo Robinson, Monroe's brother, who testified that Monroe came to his house on the night of the robbery, naked, and told Robinson that he had been robbed and shot at; Clay Connolly, the police lieutenant who investigated Monroe's report and who provided the names of the defendants to detective Todd Card; and Card, who prepared the photo lineups from which Monroe identified the defendants.

The defense's cross-examination focused primarily on the reliability of Monroe's identification of Petitioner and Kaham, and inconsistencies in Monroe's account of the timeline of events. Petitioner did not present any witnesses, but Kaham's counsel called Monroe's stepbrother, Jerome Brown, as an alibi witness. Brown testified that he had known the defendants for ten years, and that they often played video games together. Brown testified that on the night of the robbery the defendants were playing video games with him at a friend's house. He testified that when Monroe called him the day after the robbery and told him that "Sam and Bobo" had robbed him, Brown told Monroe that was impossible because both defendants had been with him.

On cross-examination by the prosecutor, Brown testified that several other people were present at the trailer, and people came and went during the evening. He testified that it was possible that Petitioner and Kaham could have left the house for half an hour or more. The prosecutor used Brown's prior deposition to show that he had

given inconsistent testimony regarding the date of the robbery, who was present that night, and whether he smoked marijuana while playing video games.

During closing argument, Petitioner's trial counsel, John Stokes, made the following argument on the identification issue: "[D]oes anyone find it interesting that Mr. Monroe gets the nicknames . . . of the two men accused here today, from a relative of his that we don't even hear from? He gets the names from someone else. And that's what starts the ball rolling pointing to these gentlemen. That's it." App. Exh. B, 213. Kaham's counsel also challenged Monroe's identification, paraphrasing Monroe's testimony as follows: "[']I kind of knew them from around, it was those two guys. And I don't know their names, but, oh, I'll get their names and I'll tell the officer I know their names, but I won't tell the officer actually I didn't know their names, officer, I got their names from my cousin, if you can call him my cousin.['] The officer said, no, he came and told me I know who it was, these are their names, not where he got it from." *Id*. at 226.

Regarding Monroe's testimony, the prosecutor in closing argument stated: "Is there any evidence of, we will call it an agenda, a motive, a bias on the part of Mr. Monroe to, for lack of a better word, frame these two people? Again, I don't think there was any evidence of that." *Id*. at 221. Concerning the testimony of the defendants' alibi witness, Jerome Brown, the prosecutor stated: "The defense says you have no reason to disbelieve [Brown]. Can you honestly say you believe that man. Would you loan him money and expect to get it back? Would you trust him in an important matter in your lives? Would you invite him to care for your children?" *Id*. at 234.

The jury found Petitioner guilty as charged, and the court sentenced him to ten

years imprisonment, followed by ten years probation. App. Exh. A, 40-49. The First District Court of Appeal affirmed without written opinion. App. Exh. F.

Petitioner filed a motion for postconviction relief pursuant to Fla. R. Crim. P. 3.850, asserting that his trial counsel rendered ineffective assistance by: (1) failing to move for a severance from Kaham; (2) failing to move to suppress the out-of-court and in-court identification by Monroe on the ground that it was not based on Monroe's independent knowledge; (3) failing to call an alibi witness; and (4) failing to object to prosecutorial misconduct in closing argument. The trial court summarily denied relief on Petitioner's first two grounds, finding that they were conclusively refuted by the trial record. App. Exh. H at 317-20. The court conducted an evidentiary hearing on the remaining two grounds. Following the evidentiary hearing, the court denied relief on the remaining claims. *Id*. at 329-31. The First DCA affirmed without opinion. App. Exh. L.

The instant federal petition followed. Petitioner asserts the same grounds for relief as he asserted in the trial court, with the exception of his claim that his trial counsel rendered ineffective assistance for failing to move for a severance. *See* Doc. 1. Respondent concedes that the Petition is timely and that Petitioner's claims are exhausted. Doc. 13.

**Section 2254 Standard of Review**

For properly exhausted claims, there are limitations on this court's review of state court findings of fact. Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding." Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them."). *See also, Carey v. Musladin,* 549 U.S. 70, 74-77 (2006) (§ 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases "[r]eflecting the lack of guidance from this Court," on the issue).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. *Williams v. Taylor,* 529 U.S. 362, 404-406 (2000); *Bell v. Cone,* 535 U.S. 685, 694 (2002) (citing *Williams* ). Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that

reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Williams,* 529 U.S. at 412-13. "Avoiding these pitfalls [described in *Williams v. Taylor* ] does not require citation of our cases-indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8 (2002) (emphasis in original). Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson,* 542 U.S. 649, 652 (2004).

**Ineffective Assistance of Counsel**

Because Petitioner's claims raise the issue of counsel's effectiveness, a review of *Strickland v. Washington*, 466 U.S. 668 (1984), is appropriate. To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697. The court need not address the adequacy of counsel's performance when a defendant fails to make a sufficient showing of prejudice. *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

With regard to the performance prong of *Strickland*, a defendant must provide

factual support for his contentions that counsel's performance was constitutionally deficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987). The court must consider counsel's performance in light of all of the circumstances at that time and indulge in a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance. *Strickland*, 466 U.S. at 689-90.

To show that counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). This standard is objective, and "it matters not whether the challenged actions of counsel were the product of a deliberate strategy or mere oversight. The relevant question is not what actually motivated counsel, but what reasonably could have motivated counsel." *Gordon v. United States*, 518 F.3d 1291, 1302 (11th Cir. 2008) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *Darden v. Wainwright*, 477 U.S. 168, 186 (1986)). "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption . . . that [counsel] did what he should have done and that he exercised reasonable professional judgment." *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001).

To show prejudice, a defendant must show more than simply that counsel's conduct might have had "some conceivable effect on the outcome of the proceeding."

*Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*.

The Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler*, 218 F.3d at 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether a reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000).

**<u>Petitioner's Claims</u>**

**(1) <u>Ineffective Assistance Regarding Monroe's Identification</u>**

Petitioner contends that his trial counsel rendered ineffective assistance for failing to move to suppress Monroe's out-of-court identification of him, and for failing to object to Monroe's identification of him at trial. Petitioner argues that Monroe's cousin provided Petitioner's name to Monroe, "and that identification was the only evidence that connected Petitioner to [the] crime." Doc. 1. In summarily rejecting this claim, the trial court applied *Strickland* and determined that the trial record conclusively refuted Petitioner's claim because Monroe testified during the trial that he independently identified Petitioner and Kaham from the photo lineup as the people who robbed him. App. Exh. H. at 318.

Whether an out-of-court identification violates due process is analyzed in two

steps. *United States v. Diaz,* 248 F.3d 1065, 1102 (11th Cir. 2001). First, the court asks whether the original identification procedure was unduly suggestive. *Id.* If the court concludes that the identification procedure was suggestive, it then considers "whether, under the totality of the circumstances, the identification was nonetheless reliable." *Id.* "Factors to be considered in determining whether the identification was reliable include: (1) opportunity to view; (2) degree of attention; (3) accuracy of the description; (4) level of certainty; and (5) length of time between the crime and the identification." *Id.* (citing *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972)).

In this case, Detective Card testified that he identified two suspects based on the investigative information he received from Officer Connolly. Card then obtained the drivers' license photos of the suspects, and worked with the department's crime analyst to identify photos of similar suspects to show Petitioner. Card developed an array of six photographs for each defendant. He presented each array separately to Monroe, by placing the photos face down and turning them over one by one. Detective Card instructed Monroe to identify any individual he recognized from the array for any reason. Monroe immediately recognized Petitioner as the passenger in the car on the night of the robbery. App. Exh. B at 125-32.

Petitioner suggests that the information obtained from Monroe's cousin was the only evidence that connected Petitioner to the crime, but the record establishes that Monroe independently identified Petitioner from the array. Petitioner has failed to identify anything unduly suggestive about the photographic array or the identification procedures used by Detective Card. Because Petitioner has not shown that the identification procedure was unduly suggestive, it is unnecessary to address the second

inquiry of whether the out-of-court identification was nonetheless reliable. *See Diaz*, 248 F.3d at 1102.

In determining whether an in-court identification violated a defendant's right to due process, the court considers "(1) whether the original identification procedure was unduly suggestive; and if so, (2) whether the procedure, given the totality of the circumstances, created a substantial risk of misidentification at trial." *Marsden v. Moore*, 847 F.2d 1536, 1545 (11th Cir. 1988). Petitioner has failed to show that the original identification procedure was unduly suggestive, and therefore there is no basis to conclude that the in-court identification was tainted.

Because Petitioner has not shown that there was any basis for his trial counsel to move to suppress the out-of-court identification as unduly suggestive, or to object to the in-court identification, he has made no showing that counsel's performance was either deficient or prejudicial. Accordingly, Petitioner has not shown that the state court's rejection of this claim was contrary to, or an unreasonable application of, *Strickland*.

**(2) Failure to Call Alibi Witness**

Petitioner contends that his trial counsel rendered ineffective assistance by not calling his aunt, Zipora Smothers, to testify as an alibi witness. Ms. Smothers testified at the evidentiary hearing on Petitioner's Rule 3.850 motion. She stated that if called as a witness, she would have testified that she was at Jerome Brown's house on the night of the robbery, and that Petitioner and Kaham were there. She testified that there were from five to fifteen people at the trailer that evening, and that she did not watch Petitioner the entire time. App. Exh. I.

Petitioner's trial counsel, Mr. Stokes, testified that he was aware of Ms. Smothers as a potential alibi witness. Ms. Smothers waited outside of the courtroom during trial. Mr. Stokes' recollection of Ms. Smothers' expected testimony at the time of the trial was that it was not "so clear and so solid" as she testified at the evidentiary hearing. *Id*. Mr. Stokes testified that Ms. Smother's expected testimony was not wholly consistent with Jerome Brown's alibi testimony. Mr. Stokes felt that Petitioner had a strong defense based on misidentification and Brown's alibi testimony, and that it was strategically advantageous to forego calling a witness so that he could have the first and last closing argument. *Id*. Mr. Stokes testified that he discussed this strategy with Petitioner at the time of trial, and that he and Petitioner agreed that it was "time to fold the tent," and forego calling Ms. Smother's as a witness. *Id*. at 41.

In denying relief on this claim, the trial court specifically accepted as true Mr. Stokes' testimony that Petitioner agreed with the strategic decision to not call Mr. Smothers. The court found that counsel's strategic decision "was reasonable under prevailing professional norms, considering all the circumstances and considering counsel's perspective at the time of trial." App. Exh. H at 330.

"Complaints concerning uncalled witnesses impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative." *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980). In this case, the state court considered the testimony of Ms. Smothers at the evidentiary hearing and Mr. Stokes' rationale for deciding not to call her as an alibi witness. The court expressly credited Mr. Stokes' testimony that Petitioner agreed to his trial strategy. The state court's findings as to witness credibility

are presumptively correct. *See Brown v. Head*, 272 F.3d 1308, 1314 (11th Cir. 2001).

In light of the trial record and the testimony adduced at the evidentiary hearing, the state court's conclusion that Mr. Stokes exercised reasonable professional judgment by not calling Ms. Smothers as a witness was not contrary to, or an unreasonable application of, *Strickland*. Accordingly, Petitioner has not shown that he is entitled to habeas relief on this claim.

**(3) <u>Ineffective Assistance Regarding Alleged Prosecutorial Misconduct</u>**

Petitioner contends that his trial counsel rendered ineffective assistance for failing to object to the two specific comments, quoted above, made by the prosecutor in closing argument. The first comment concerned the lack of evidence of any motive by Monroe to "frame" the defendants. Petitioner argues that this comment improperly placed a burden upon him to produce evidence, in violation of his constitutional right to remain silent. On postconviction review, the trial court found that the remarks were "proper comment on the issue of the victim/witness's credibility. His credibility was a major – perhaps *the* major – issue for the jury to decide. The State's argument essentially was: the jury had no reason to doubt the accuracy or truthfulness of the victim's testimony. To argue the issue as was done here does not shift the burden." App. Exh. H at 329.

The second comment identified by Petitioner concerned the prosecutor's argument that Jerome Brown was not believable, in which the prosecutor stated: "Would you loan him money and expect to get it back? Would you trust him in an important matter in your lives? Would you invite him to care for your children?" App. Exh. B. at 234. At the evidentiary hearing on Petitioner's postconviction motion, Mr.

Stokes testified that he did not object to the prosecutor's comment because he believed it was a fair comment on the credibility of the witness. App. Exh. I at 42-43. The trial court agreed, finding that the comment addressed the witness's credibility, not character. App. Exh. H. at 329-30.

Where a prosecutor's objectionable argument was "'invited by or was responsive to the opening summation of the defense,' a reviewing court must determine the comment's effect on the trial as a whole." *Whisenhant v. Allen*, 556 F.3d 1198, 1207 (11th Cir. 2009) (quoting *Darden*, 477 U.S. at 182). "In *Darden*, the Supreme Court recognized that a defendant's due process right to a fair trial is not infringed by a prosecutor's remarks that are 'undesirable or even universally condemned.' . . . Instead, the comment must have infected the trial with such unfairness that the conviction constitutes a denial of due process . . . Any challenged remarks must be evaluated in context based upon the defense argument that preceded it." *Id*. (quoting *Darden*, 47 U.S. at 179-82) (internal citations omitted).

As to the first comment challenged by Petitioner, it is clear from the trial record that the prosecutor was responding to Mr. Stoke's closing argument. Mr. Stokes vigorously challenged Monroe's credibility as a witness and attempted to create doubt regarding the reliability of Monroe's identification of the defendants, consistent with the defense's theory that Monroe identified the defendants for some reason other than his personal observation of them during the robbery. The prosecutor's responsive comment that there was no evidence that Monroe had any reason or motive to "frame" the defendants was directed to defense counsel's argument.

As to the second comment challenged by Petitioner, Jerome Brown's credibility

as an alibi witness was a key issue in the case, and Mr. Stokes initially raised Brown's credibility in his closing argument. Stokes argued that if Brown was going to lie in providing an alibi, then he could have embellished his testimony with facts that would have aided the defense, such as testifying that the defendants were with him the entire evening rather than admitting that they could have left and returned. App. Exh. H. at 255. Stokes then argued: "He didn't say that, and that should tell you something. That's not somebody looking to lie and lock down a solid lie that nobody can pick apart. He's answered the questions truthfully, honestly and straightforward. . . . I submit to you Mr. Brown's testimony is the kind of testimony that you can put faith and stock in and recognize that the man had an opportunity, if he was lying, to make it a better lie and didn't do so." *Id*. at 255-56. The prosecutor's argument regarding whether Brown was, in fact, a believable and trustworthy witness responded directly to Stokes' argument. Further, in his final comments to the jury Stokes quoted the prosecutor's comment and argued to the jury that the same questions should be applied to Monroe's testimony to decide whether he was a believable and trustworthy witness. *Id*. at 283.

Viewing the record as a whole, Petitioner has not shown that the prosecutor's comments rendered his trial fundamentally unfair. As the trial court determined, the challenged comments pertained to the credibility issues that were central to the trial. The trial court did not expressly state whether Petitioner's ineffective-assistance claim failed on the performance or prejudice prongs of *Strickland* (or both), but it follows from the trial court's finding that the argument was proper that counsel was not deficient for failing to object. *See* App. Exh. H at 329-30. The record also supports a conclusion that, even if the comments were objectionable, Petitioner has failed to demonstrate

prejudice because the comments did not render his trial fundamentally unfair, and there is not a reasonable probability that the outcome of the trial would have been different had counsel objected to those two isolated comments. *See Strickland*, 466 U.S. at 694. Accordingly, Petitioner has failed to show that the state court's rejection of this claim was contrary to, or an unreasonable application of, *Strickland*.

## Conclusion

Accordingly, for the foregoing reasons it is respectfully **RECOMMENDED** that the petition for a writ of habeas corpus, Doc. 1, be **DENIED,** and that a certificate of appealability be **DENIED**.

**IN CHAMBERS** this 16th day of March 2011.

s/Gary R. Jones
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**